Filed 3/5/13  Robert M. v. Superior Court CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT M.,<br><br>　　　　Petitioner,<br><br>　v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>　　　　Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>　　　　Real Party in Interest. | F066375<br><br>(Super. Ct. No. JD126056-00)<br><br>**O P I N I O N** |

## THE COURT*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Jon E. Stuebbe, Judge.

Robert M., in pro. per., for Petitioner.

No appearance for Respondent.

Theresa A. Goldner, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

\*    Before Wiseman, Acting P.J., Kane, J., and Peña, J.

Robert M. in propria persona seeks an extraordinary writ (Cal. Rules of Court, rule 8.452) from the juvenile court's orders terminating his reunification services at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[1] and setting a section 366.26 hearing as to his six-year-old son, Dylan.  He contends the juvenile court violated his rights under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.).  Alternatively, he contends the juvenile court erred in finding there was not a substantial probability Dylan could be returned to his custody.  We disagree and deny the petition.

### FACTUAL AND PROCEDURAL SUMMARY

Robert and his girlfriend, Alicia,[2] are the parents of Dylan, the subject of this writ petition.  In February 2011, sheriff's deputies responded to a report of domestic violence at the family residence and found Robert and Alicia under the influence of methamphetamine and Alicia complaining of neck pain.  She said Robert hit her several times in the back of the head.  Alicia was transported to the hospital, Robert was arrested, and then four-year-old Dylan and his eight-year-old half brother Johnny were taken into protective custody by the Kern County Department of Human Services (department).  They were placed together in foster care.

In April 2011, the juvenile court exercised its dependency jurisdiction pursuant to an original petition (§ 300, subd. (b)), ordered the children removed from parental custody, and ordered reunification services for Alicia as to Dylan and Johnny, and for Robert as to Dylan.  Robert and Alicia's services plans required them to participate in domestic violence and substance abuse counseling and submit to random drug testing.

---

[1]    All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    Alicia did not file a writ petition.

2

The juvenile court did not offer reunification services to Johnny's alleged father. The juvenile court set the six-month review hearing for September 2011, though it was continued until November.

Meanwhile, Robert and Alicia separated and were both doing well in their services plans; however, Robert began what the juvenile court would later characterize as a "campaign" to discredit Alicia. In August 2011, social worker Grace Abaya visited Robert at his home. He took the opportunity to tell her that Alicia was using drugs and had a drug-addicted boyfriend. Abaya told Robert that she could not discuss Alicia's case with him and told him he needed to focus on himself and his efforts to reunify with Dylan. According to Abaya, "Robert kept going on and on about Alicia" and she had to interrupt him to tell him not to worry about her. In addition, Robert made increasing demands for more time with Dylan and accused the department of treating him unfairly in relation to Alicia. In its report for the six-month review hearing, the department advised the juvenile court that Robert appeared to be attempting to exert control over Alicia through Dylan, and stated it was not yet ready to recommend family maintenance services for either parent.

In November 2011, at the six-month review hearing, the juvenile court continued reunification services for Robert and Alicia to the 12-month review hearing, which it scheduled in March 2012. It was continued and ultimately conducted as to Robert in December 2012.

In the interim, Robert's preoccupation with Alicia intensified, particularly as it related to her boyfriend, David. Robert enlisted the assistance of his two ex-wives, Michelle and Robin, to track Alicia and her activities. Michelle lived in Alicia's neighborhood. She videotaped Alicia and followed her in her car. Robin lived in Georgia. While researching Alicia and David's names on the Internet, she discovered that Alicia was scheduled to appear in Ridgecrest for a hearing on a petition for a

3

restraining order filed by David. Robin informed Robert who with his girlfriend, Rosemary, traveled to attend the hearing. They sat in the courtroom until the case was called and dismissed. All the while, Alicia had a restraining order against Robert prohibiting him from being within 100 yards of her. Robin also filed a complaint with a state agency against the veterinarian who employed Alicia. As a result, the veterinarian was investigated for violations.

In April 2012, the department filed a petition under section 388 asking the juvenile court to order a psychological evaluation for Robert in light of his behavior and information the department received that Robert had previously been diagnosed with obsessive compulsive disorder, depression, and bipolar disorder. The juvenile court set a hearing on the section 388 petition for April 2012.

In May 2012, the juvenile court conducted the 12-month review hearing as to Alicia and ordered the children placed with her under family maintenance. As part of her family maintenance plan, Alicia was required to submit to monthly random drug testing. The juvenile court continued the 12-month reviewing hearing as to Robert and the section 388 hearing (combined hearing) to May 2012.

The combined hearing was continued and convened in June 2012. After hearing testimony, the juvenile court granted the section 388 petition and appointed psychologist Dr. Eugene T. Couture to evaluate Robert. The juvenile court also continued the 12-month review hearing to August 2012. The 12-month review hearing was continued multiple times and conducted as a contested hearing in December 2012.

Meanwhile, in July 2012, Dr. Couture evaluated Robert and diagnosed him with bipolar I disorder. During the evaluation, Dr. Couture ascertained that Robert had been treated for the disorder since the 1990's and was receiving appropriate medical treatment for it. Nevertheless, Dr. Couture opined that Robert was either still symptomatic or also had a personality disorder. Further, he opined that Robert presented a continuing danger

4

to Dylan, even with treatment, and that the juvenile court should cease any effort to reunite them.

In October 2012, the department filed a non-custody supplemental petition (§ 387) asking the juvenile court to detain Dylan and Johnny because Alicia had stopped drug testing and her live-in boyfriend, Joseph, threw a porcelain plate at her striking her in the arm, and threatened to kill her. It was also reported that Alicia appeared to be under the influence of drugs.

Alicia explained that she had not drug tested because she was undergoing chemotherapy for thyroid cancer and that the chemotherapy impaired her memory and caused bladder infections, which prevented her from producing a urine sample. She attributed any irregularities in her speech and coordination to her thyroid tumor.

In December 2012, the juvenile court convened a contested dispositional hearing as to Alicia on the supplemental petition and the 12-month review hearing as to Robert on the original petition. The department's recommendations to the juvenile court were to terminate reunification services for both parents and set a section 366.26 hearing as to Dylan and Johnny who, by this time, had been placed with a non-related extended family member. By the time of the hearing, Robert had consistently tested negative for drugs and completed an outpatient substance abuse program and domestic violence counseling.

The juvenile court first adjudicated the supplemental petition. Alicia testified about her cancer diagnosis and the effects of chemotherapy on her comportment. She also testified that she missed drug tests because her testing number was changed without her knowledge. As it turned out, her testimony was perjured and she did not have cancer. Following a continuance and further argument, the juvenile court sustained the supplemental petition and terminated Alicia's reunification services.

The juvenile court then proceeded to adjudicate the 12-month review hearing as to Robert. Dr. Couture testified and described bipolar I disorder and how it manifests

5

behaviorally. He also testified why it would be inherently dangerous to the minor child of a parent suffering from the disorder. In Robert's case, Dr. Couture stated, "I don't think he can control himself in a sufficient manner to be entrusted with the care of his son. It's that simple." At no time during the hearing did Robert's attorney raise an issue with respect to the Americans with Disabilities Act.

At the conclusion of the hearing, the juvenile court found that Robert's efforts to resolve the situation requiring Dylan's removal had been minimal. The juvenile court also found that it would be detrimental to return Dylan to Robert's custody and that there was not a substantial probability Dylan could be returned to him with continuing services. Consequently, the juvenile court terminated Robert's reunification services and set a section 366.26 hearing.

Robert filed a writ petition and appeared for oral argument. At oral argument, he raised issues not raised in his petition. Since we do not address issues raised for the first time at oral argument, we will not address them. (See *People v. Harris* (1992) 10 Cal.App.4th 672, 686.) Rather, we confine our review to the issues raised in the petition.

## DISCUSSION

### I. Americans with Disabilities Act

Robert contends that bipolar I disorder is a protected disability under the Americans with Disabilities Act (ADA). Therefore, he further contends the juvenile court violated his rights under the ADA by terminating his reunification services based on his disorder. Because Robert raises this issue for the first time on appeal, it is not properly before us. (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1252.)

In any event, "the ADA does not directly apply to juvenile dependency proceedings and cannot be used as a defense in them." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1139, overruled on another ground as stated in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6.) Consequently, even if Robert had preserved the

6

issue, the ADA is not a proper basis for challenging the juvenile court's order terminating his reunification services.

## II.     Detrimental Return

Robert contends that he fully complied with his services plan. In light of his request that the juvenile court be directed to return Dylan to his custody, his contention could be liberally construed as a challenge to the juvenile court's finding that returning Dylan to Robert would place Dylan at a substantial risk of detriment. We will so construe it.

At each review hearing, there is a statutory presumption that the child will be returned to parental custody unless the juvenile court finds, by a preponderance of the evidence, that the return of the child would create a substantial risk of detriment to the child's safety, protection or well-being. (§§ 366.21, subds. (e) & (f); 366.22, subd. (a).) In assessing the risk of detriment, the juvenile court considers the extent to which the parent participated and made progress in the court-ordered treatment plan. (§§ 366.21, subds. (e) & (f); 366.22, subd. (a).) However, ultimately, the court's decision hinges on whether the child would be safe in parental custody. (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141-1142.)

On a challenge to the sufficiency of the evidence to support the juvenile court's finding, the question is not whether the juvenile court could have made a contrary finding, but whether the finding it made is supported by substantial evidence. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 228.) On the facts of this record, we conclude that it is.

In this case, Dr. Couture testified that Robert's sense of entitlement without bounds made him inherently dangerous and the record supports his opinion. Robert's completion of his services plan does not diminish that danger or otherwise make him a

7

safe parent. Thus, the juvenile court properly ruled in not returning Dylan to Robert's custody.

### III. Substantial Probability of Return

Robert's contention that he fully complied with his services plan could also be construed as challenging the juvenile court's finding there was not a substantial probability of return. If the juvenile court finds there is a substantial probability that the child can be returned to parental custody and safely maintained in the home, the juvenile court can continue services beyond 12 months.[3] (§§ 361.5, subd. (a)(3); 366.21, subd. (g)(1).)

One of the factors the juvenile court must affirmatively find in assessing the probability of return is whether the parent demonstrated the capacity and ability to complete the objectives of his or her treatment plan. (§ 366.21, subd. (g)(1)(C).) However, the juvenile court must also find that the parent "demonstrated the capacity and ability … to provide for the child's safety, protection, physical and emotional well-being, and special needs." (*Ibid.*)

Here, even though Robert completed the technical requirements of his services plan, there was substantial evidence that returning Dylan to his custody would endanger Dylan. Further, there was no evidence that extending Robert's services would change the situation. Thus, the juvenile court properly found there was not a substantial probability

---

**3** Technically, the juvenile court in this case would have also been required to find that it was in Dylan's best interest in order to continue services. That is so because Robert had already received in excess of 18 months of services when the juvenile court conducted the 12-month review hearing in December 2012. Under the statute, the juvenile court can extend reunification services up to 18 months from the date the child is originally removed from the parent's physical custody. (§ 361.5, subd. (a)(3).) Since Dylan was originally removed from Robert's physical custody in February 2011, August 2012 marked 18 months of reunification.

of return and properly ruled in terminating Robert's reunification services and setting a section 366.26 hearing.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.