Filed 6/30/15  Primex Clinical Laboratories v. Dept. of Health Services CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PRIMEX CLINICAL LABORATORIES, INC., | C074343 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2012-80001187-CU-WM-GDS) |
| v. | |
| DEPARTMENT OF HEALTH SERVICES, | |
| Defendant and Respondent. | |

In 2000, the Department of Health Services (Department) informed Primex Clinical Laboratories, Inc. (Primex), a provider of Medi-Cal services, that Primex was under investigation for various violations of Medi-Cal provisions.  In connection with that investigation, the Department withheld Primex's Medi-Cal payments for services and suspended Primex as a Medi-Cal provider.  In 2004, the parties settled the case, allowing the Department to retain the funds withheld from Primex during the investigation and reinstating Primex as a Medi-Cal provider.

1

Nearly eight years after the settlement, Primex filed this action by way of a petition for writ of mandate, asserting that Primex was entitled to the funds ($685,820.44) the Department withheld during the investigation. The trial court denied the petition.

We affirm. The settlement allowed the Department to retain the funds, and nothing in the statutory scheme requires now that the Department pay it to Primex.

BACKGROUND

It appears that there is no dispute concerning the facts (as opposed to their legal effect), so we recount the facts as stated by the trial court.

"Primex is a licensed clinical laboratory participating in the Medi-Cal program.

"In or about October 2000, the Department received notice that Primex was committing possible violations of various Medi-Cal provisions. On October 17, 18, and 26, 2000, Department staff conducted onsite investigations of Primex's labs and records.

"On or about February 14, 2001, the Department received an email from the federal Health Care Financing Agency (now known as the Centers for Medicare and Medicaid) to stop Medicare payments to Primex because it was being sanctioned by the federal government. The HCFA also informed staff at the Department that some of Primex's directors were the subject of a federal criminal investigation being undertaken by the Federal Bureau of Investigation.

"On March 29, 2001, the Department issued a letter informing Primex that pursuant to Welfare and Institutions Code sections 14107.11 and 14043.6 and 42 C.F.R. § 455.23, the Department was temporarily suspending and deactivating Primex's Medi-Cal provider number and withholding 100% of the payments owed to Primex as a Medi-Cal provider (the 'Temporary Suspension and Withhold'). The letter identified possible violations of licensing laws and standards, and advised Primex that it was under investigation for possible fraud, abuse, or willful misrepresentation in the Medi-Cal program. The alleged deficiencies included: failing to supply patient testing documents; failing to give notice of reportable diseases; failing to report patient test results in a

2

timely manner; billing for tests for which no supporting documentation was available; receiving invalid referrals; performing more tests than required; performing and billing for tests that were not medically necessary; allowing unlicensed personnel to perform testing; providing lab testing to clients at less than the cost reimbursed by the Medi-Cal program (overbilling); reporting test results that are incompatible with human life; failing to enroll in proficiency testing; and failing to notify clients of critical test values.

"Following the Temporary Suspension and Withhold, on June 26, 2001, the Department issued a Statement of Deficiencies describing Primex's alleged violations of the licensing laws and standards. The list of deficiencies was substantially the same as that identified in the March 29, 2001, letter. Primex responded with an itemized Plan of Correction, which the Department accepted.

"On October 10, 2001, the Department served Primex with a Notice of Intent to Impose Civil Money Penalties for the previously-identified deficiencies.

"October 17, 2001, the Department issued a Notice of Sanction[] to Primex, assessing a penalty of $136,000 for licensing violations, plus $13,865 for investigative costs, for a total penalty of $149,865. Primex appealed the Notice of Sanction[].

"During the pendency of Primex's appeal, the State Controller's Office initiated and completed an audit of Primex's billing records. The audit resulted in no adverse findings against Primex.

"In July 2004, Primex and the Department settled the appeal arising from the Notice of Sanction[]. The Settlement Agreement refers to the October 2000 investigation of Primex's labs; the July 3, 2001, Statement of Deficiencies; the October 9, 2001, Notice of Intent to Impose Civil Money Penalties; and the October 17, 2002, Notice of Sanction[]. The Settlement Agreement also refers to the March 29, 2001, Temporary Suspension and Withhold, and indicates that, as of the date of the Settlement Agreement, the Department was withholding $835,685.44 of Primex's Medi-Cal earnings.

3

"The Settlement Agreement recites that the parties have discussed the issues raised by the 'Notice of Sanction, and by the imposition of the Temporary Suspension and Withhold,' and agreed to resolve these issues. Under the Settlement Agreement, Primex agreed to pay, from the funds withheld by the Department, civil money penalties and investigation costs in the amount of $149,865 to the Department's Lab Field Services Branch. In exchange, the Department agreed to lift the Temporary Suspension and Withhold and reactivate Primex's Medi-Cal provider number. The parties also agreed that '[t]he Department shall retain the remainder of the [withheld funds], totaling $685,820.44.'

"In the general provisions of the Settlement Agreement, the parties agreed that the settlement resolved 'only the issues dealt with in the above-referenced Notice of Sanction,' and that nothing in the Agreement 'restricts the filing of a criminal prosecution nor limits any claims that may be made therein or binds any federal, other state, or local prosecuting, administrative, or regulatory authorities.'

"The parties also agreed to 'waive all rights either party may have to further litigate, in any forum, as between the parties, the issues raised by this appeal.'

"In August 2004, shortly after the Settlement Agreement, the Department released $149,865 from the Withhold for payment to the State of the civil money penalties and investigation costs, and directed that the balance of the Withhold be transferred to the Health Care Deposit Fund, which is part of the State's General Fund. The transfer had the effect of liquidating any funds remaining in the temporary withhold account.

"From 2004 through June 2012, Primex took no action to recover or inquire about the balance of the withheld funds. On June 22, 2012, Primex filed the present action seeking a peremptory writ of mandate compelling the Department to release and remit to Primex the balance of the withheld funds, totaling $685,820.44, plus interest."

The trial court determined that the "critical issue" was how to interpret the provision of the settlement agreement providing that the Department "shall retain" the

4

remaining funds in the withhold.  The Department argued that the provision gave the funds to the Department permanently, while Primex argued that the provision allowed the Department to retain the funds only temporarily, until the conclusion of the Department's investigation into fraud and abuse.

The court found some ambiguity in the "shall retain" provision and looked to the remainder of the agreement and also to extrinsic evidence to resolve the ambiguity.

Concerning the scope of the settlement agreement, the court wrote:  "Although there is language in the general provisions of the Settlement Agreement suggesting that the Agreement was only intended to resolve the issues identified in the Notice of Sanction, the specific provisions of the Agreement establish that the parties intended to settle the issues raised by the imposition of the Temporary Suspension and Withhold." Also, "the parties agreed in the Settlement Agreement to resolve the matters raised by the appeal in 'final decision' and 'without the necessity of further proceedings.'  The parties expressly agreed to 'waive all rights . . . to further litigate, in any forum, as between the parties, the issues raised by this appeal.' "  Concluding its analysis of the contract language, the court reasoned that, if the retention of the remaining funds in the withhold was intended to be temporary, the settlement agreement would have made that clear.

Concerning extrinsic evidence, the court relied on the subsequent conduct of both parties.  The Department liquidated the funds, transferring them to the general fund, and did not notify Primex of the status of the funds, while Primex did nothing to recover the funds, or even to inquire about them, for nearly eight years.

The trial court therefore denied the petition for writ of mandate because the Department has no legal duty to release the funds to Primex.

LAW REGARDING WRIT OF MANDATE

A traditional writ may issue to compel the performance of a ministerial duty, and "to correct those acts and decisions of administrative agencies which are in violation of law, where no other adequate remedy is provided.  [Citations.]"  (*Bodinson Mfg. Co. v.*

5

*California E. Com.* (1941) 17 Cal.2d 321, 329; see also Code Civ. Proc., § 1085.) "Generally, Code of Civil Procedure section 1085 may only be employed to compel the performance of a duty which is purely ministerial in character. [Citation.] [¶] A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion, on the other hand, is the power conferred on public functionaries to act officially according to the dictates of their own judgment. [Citation.]" (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 501-502.)

Here, Primex asserts that the Department has a ministerial duty to return the remaining funds in the withhold.

DISCUSSION

I

*Contract Interpretation*

Primex contends that, applying contract interpretation principles to the settlement agreement, we must conclude that the parties intended for the Department's retention of the remaining funds in the withhold to be temporary only. To the contrary, both (1) the most reasonable interpretation of the settlement agreement and (2) the extrinsic evidence of the parties' subsequent conduct favor the interpretation placed on the agreement by the trial court.

"In interpreting the settlement agreement, we apply the general rules of contract interpretation. [Citation.] 'The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties. [Citations.]' [Citation.] Thus, 'a "court's paramount consideration . . . is the parties' objective intent when they entered into [the contract]." [Citations.]' [Citation.] 'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' [Citation.] ' "If a contract is capable of two

6

constructions courts are bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect . . . ." [Citations.]' [Citation.] In addition, '[a]n interpretation which gives effect is preferred to one which makes void.' [Citation.]" (*Khavarian Enterprises, Inc. v. Commline, Inc.* (2013) 216 Cal.App.4th 310, 318.)

"Whether contractual language is ambiguous is a question of law that we review de novo. [Citations.] . . . The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function unless the interpretation turns on the credibility of extrinsic evidence. [Citations.]" (*American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1245.) Here, our review is de novo because it is a matter of contract interpretation and the extrinsic evidence is not in conflict. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.)

Primex argues that (1) the language of the settlement agreement clearly and unambiguously stated the parties' intention to make temporary the retention of the remaining funds in the withhold and (2) the extrinsic evidence supports this interpretation. Neither argument has merit.

The language of the settlement agreement, viewed as a whole, allowed the Department to retain permanently the remaining funds in the withhold.

The specific provision allowing the Department to retain the remaining funds in the withhold did not expressly state whether the retention of the remaining funds was to be permanent:

"2. Withhold. The Withhold will be managed as follows:

"a. The Department shall release $149,865 from the Withhold funds to attorney I. Mark Bledstein, Esq. Mr. Bledstein shall deposit these funds into his Client Trust Account . . . . Within two business days, he shall disburse this same amount by

7

check made out to 'California Department of Health Services, Laboratory Field Services,' . . . .

"b.     The Department shall retain the remainder of the Withhold, totaling $685,820.44."  (Boldface & underscoring omitted.)

In this manner, the settlement agreement provided that the Department would retain the remaining funds, but it did not provide for what it would do with the funds. Therefore, the specific provision was ambiguous, at least in the sense of what the Department was to do with the remaining funds.

Each party cites other language in the settlement agreement, claiming that it resolves the ambiguity in the specific provision in its own favor.  The trial court agreed with the Department, and we also find that interpretation the most reasonable.

As recounted above, the trial court acknowledged that the settlement agreement had a provision stating that its only purpose was to resolve the notice of sanction.  The settlement agreement provided:  "These matters and Agreement resolve only the issues dealt with in the above-referenced Notice of Sanction[].  Nothing herein restricts the filing of a criminal prosecution nor limits any claims that may be made therein nor binds any federal, other state, or local prosecuting, administrative, or regulatory authorities." (Underscoring omitted.)  The notice of sanction imposed the civil penalty of $149,865, including investigative costs, all of which Primex agreed to pay out of funds released from the withhold.  That would seem to favor an interpretation that the remaining funds in the withhold would be held temporarily for payment as a result of other proceedings.

But the settlement agreement also contained language, as noted by the trial court, indicating that the settlement agreement resolved all current proceedings by the Department against Primex, not just the notice of sanction, and prevented further litigation.  The settlement agreement specifically provided that it "resolve[d] the temporary suspension and withhold imposition."  And the parties "waive[d] all rights either party may have to further litigate, in any forum, as between the parties, the issues

8

raised by this appeal." This language specifically prohibits further litigation with respect to not only the notice of sanction but also the temporary suspension and withhold. Since the settlement agreement goes well beyond the matter of the notice of sanction, it cannot be construed to be limited to the notice of sanction, despite the language in the agreement to the contrary.

Our objective is to give meaning to every word and provision in the contract, "*if reasonably practicable*." (Civ. Code, § 1641, italics added.) Here, it is not reasonably practicable, given the whole of the contract, to limit the scope of the settlement agreement to resolution of the notice of sanction.

Primex contends that interpreting the settlement agreement as giving the remaining funds in the withhold to the Department permanently is an absurd and unfair result and must be avoided. (See *Wright v. Coberly-West Co.* (1967) 250 Cal.App.2d 31, 35-36 [contracts interpreted to avoid harsh or inequitable result].) According to Primex, construing the settlement agreement to mean that it gave up $835,685.44 to settle $149,865 in sanctions is absurd and harsh. We disagree with the premise and the conclusion. The effect of the settlement agreement was to resolve not only the notice of sanction but also to resolve all issues that resulted in the suspension of Primex's status as a Medi-Cal provider and to reinstate Primex as a Medi-Cal provider. The record does not reflect that Primex's suspension as a Medi-Cal provider would have been restored simply by paying the amount in the notice of sanction. Under those circumstances, this interpretation of the settlement agreement is neither harsh nor absurd.

Primex also contends that, considering the settlement agreement in the context of the relevant statutes, we must conclude that the retention of the remaining funds in the withhold was meant to be temporary. Because a withhold is only a temporary condition under the statute (see Welf. & Inst. Code, § 14107.11, subd. (a)(2)(A)), argues Primex, language in the settlement agreement providing that the Department would retain the remaining funds in the withhold must be interpreted to mean that it was to retain the

9

funds only temporarily. This interpretation, however, ignores the fact that the settlement agreement resolved the withhold. The Department was given the remaining funds to be turned over to the general fund, which is not inconsistent with the statute in this regard.

Therefore, the most reasonable interpretation of the settlement agreement is that the parties intended for the Department to retain the withhold permanently.

In any event, even if we were to conclude that the settlement agreement is hopelessly ambiguous on its face, the subsequent conduct of the parties, for at least the first eight years after they entered into the settlement agreement, showed that they believed the Department's retention of the withhold was to be permanent. (See *Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [subsequent conduct relevant to show intent].)

There have been no further proceedings by the Department concerning Primex's conduct that led to the temporary suspension and the withhold since the signing of the settlement agreement. That is evidence that the parties intended the settlement agreement to resolve all issues without further litigation. And, if all issues were resolved, then it only makes sense that the retention of the remaining funds in the withhold was meant to be permanent because there was no further purpose for a withhold fund going forward, at least as it related to the Department.

Also, as noted by the trial court, the Department turned the remaining funds over to the general fund, and Primex made no claim to those funds until nearly eight years later. That conduct is inconsistent with an intent to have the Department's retention of the remaining funds in the withhold be temporary.

At oral argument, counsel for Primex argued that Primex delayed seeking a refund of the remaining funds in the withhold because of an ongoing qui tam action that was not resolved until 2011. That argument was not raised in the briefs on appeal, nor was it supported by evidence in the record; therefore, the argument was improper, and reliance on the argument is forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(C); *People v. Harris* (1992) 10 Cal.App.4th 672, 686.)

10

The trial court properly interpreted the settlement agreement as making the Department's retention of the remaining funds in the withhold permanent.

## II

### *The Department's Authority*

Primex argues that the Department had no statutory authorization to retain the remaining funds in the withhold permanently and that the settlement agreement could not expand the Department's authority in that regard. According to Primex, the Department only has two options under the statutory authority: (1) initiate a judicial proceeding against Primex or (2) abandon the funds back to Primex. The argument is unpersuasive because the Department has authority to settle such controversies, as it did here by agreeing with Primex to terminate proceedings concerning Primex's alleged fraud and abuse in exchange for retention of the funds.

"To be valid, administrative action must be within the scope of authority conferred by the enabling statutes. [Citation.]" (*Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 872-873.) In the case of the Department, the statutes conferred the authority to withhold Medi-Cal payments and to resolve the case against Primex.

Primex does not contend that the Department lacked authority to withhold Medi-Cal payments under Welfare and Institutions Code 14107.11. It also does not contend that the Department lacked authority to enter into the settlement agreement. Instead, it contends that "because the Settlement Agreement reserved, and did not release Primex from, any potential criminal charges, the Settlement Agreement cannot be read as resolving the disposition of the Remainder of the Withhold." According to Primex, the result of that condition (a possible criminal action) was that "the disposition of the Remainder of the Withhold was controlled by statute." We disagree.

Primex relies primarily on a case holding that the Department has the statutory authority to retain Medi-Cal payments while a provider is under investigation. (*Bergeron v. Department of Health Services* (1999) 71 Cal.App.4th 17.) In that case, the court

11

wrote: "Under the governing regulations, the Department is permitted, in fact encouraged, pursuant to 42 Code of Federal Regulations section 455.23 (1998) to withhold payments to Medi-Cal providers when provided with reliable evidence that there has been fraud or willful misrepresentation in the practices of the provider. In an obvious effort to comport with the dictates of due process, the regulation carefully lays out the limitations of the state agency's authority to take such action. They include: 1) notice must be given to the provider stating the 'general allegations as to the nature of the withholding action, but need not disclose any specific information concerning its ongoing investigation'; 2) the notice must state the regulatory authority for the withholding and advise the provider he or she may submit written evidence for consideration by the agency; and 3) the withholding must be temporary, continuing only until a final resolution of the allegations of fraud. (42 C.F.R. § 455.23; [citation].) The regulatory scheme is obviously designed to parallel a criminal investigation by the agency or a state fraud prosecuting unit. It is temporary in nature in order to hold the status quo and protect the government's monetary interests until the criminal investigation ends in either abandonment or a judicial proceeding." (*Bergeron v. Department of Health Services, supra,* at p. 24.)

*Bergeron* is unhelpful to Primex because it did not involve a settlement of such allegations, as found here. In that case, the investigation was pending. Here, on the other hand, the parties, by their settlement agreement, resolved the matters between them in the current investigation without the necessity of further proceedings. And they waived all rights to further litigate the issues in any forum. Additionally, the State Controller had already undertaken and completed an audit with no adverse findings against Primex. Therefore, the retention of the remaining funds was not done in connection with an investigation; it was the resolution.

The settlement agreement's statement that it did not "restrict[] the filing of a criminal prosecution" did not render the retention of the remaining funds in the withhold

temporary. To the contrary, the settlement agreement fully and finally resolved the litigation between the parties, including the Department's regulatory investigation of the very serious allegations against Primex. The agreement made the retention of funds permanent, and there were no funds left to be, in Primex's words, "controlled by statute." Therefore, there is no merit in Primex's contention that the permanent retention of the funds remaining in the withhold at the time of settlement was contrary to the Department's statutory authority.

## III

### *Remaining Issues*

The parties raise several other issues. The Department contends that: (1) this action is barred by the statute of limitations and by laches, (2) this court has no subject matter jurisdiction over the matter, and (3) mandamus is not available because the Department has executed its statutory duties. And Primex contends that it is entitled to interest on the funds remaining in the withhold. Since we conclude that the trial court properly ruled in favor of the Department, we need not reach these additional issues not considered by the trial court.

## DISPOSITION

The order denying the petition for writ of mandate is affirmed. The Department is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278.)


                                        NICHOLSON        , J.


We concur:


        BLEASE         , Acting P. J.


        MAURO         , J.


13