[No. C054314. Third Dist. Mar. 27, 2008.]

Estate of TROY L. McDANIEL, Deceased.
MARIANNE McDANIEL, Petitioner and Respondent, v.
MARIE McDANIEL, Objector and Appellant.

**COUNSEL**

Joseph A. Magda for Objector and Appellant.

Judy L. Carver for Petitioner and Respondent.

**OPINION**

**HULL, J.**—Troy L. McDaniel died in a motorcycle accident on September 23, 2005. On August 17, 2006, Troy McDaniel's mother, Marianne McDaniel, filed a petition for entitlement of distribution of Troy McDaniel's

estate. The petition alleged that Troy McDaniel had died intestate, that he did not have and had not had children, and that Marianne and Troy's father, Lyle McDaniel, were entitled to have Troy's estate distributed equally between them.

Appellant, Marie McDaniel, opposed the petition arguing that, despite a dissolution proceeding in 2005, she was still Troy McDaniel's wife at the time of his death and therefore entitled to inherit his estate. On that basis she asked that Marianne's petition be denied.

On October 3, 2006, based on the provisions of Probate Code section 78, subdivision (d) (all undesignated section references that follow are to the Probate Code), the trial court decided that, because Marie McDaniel was not Troy McDaniel's "surviving spouse" within the meaning of the Probate Code at the time of his death, she was not entitled to inherit from his estate. On November 17, 2006, the trial court granted Marianne McDaniel's petition for distribution and Marie McDaniel appeals. We affirm the judgment.

FACTS AND PROCEEDINGS

Because the parties to the immediate proceeding all bear the surname McDaniel, to avoid confusion and to avoid an unnecessary repetition of the surname McDaniel, we will refer to them hereafter by their first names.

Troy and Marie were married on August 1, 2003. Their marriage was troubled and Troy struggled with problems relating to alcohol and anger management.

On October 18, 2004, Marie filed a petition for dissolution of the marriage. Troy filed his response to the petition on April 28, 2005.

On May 3, 2005, Marie executed an "Interspousal Transfer Deed" granting Troy, as his sole and separate property, real estate located in Rocklin, California. On May 17, 2005, Troy executed an "Interspousal Transfer Grant Deed" granting to Marie as her sole and separate property real estate located in Roseville, California.

On July 25, 2005, the court entered a stipulated judgment dissolving the marriage and ordering that the marital partnership be terminated and the parties be restored to the status of single persons effective October 29, 2005 (that day being one day more than six months after Troy made his appearance in the action). (Fam. Code, § 2339.) Troy and Marie waived spousal support and stipulated to a division of the community property and debts. Thereafter neither party challenged the judgment or its legal effect.

The separation and dissolution proceeding notwithstanding, Marie and Troy were apparently attempting to reconcile their differences and end the dissolution proceedings before the marital partnership finally terminated on October 29, 2005. Both attended counseling sessions and Marie attended Alcoholics Anonymous meetings with Troy.

In April 2005, they each signed a private agreement providing in part that Marie would seek to vacate a restraining order against Troy that she had obtained the previous fall, that Troy, accompanied by Marie, would attend counseling sessions, that they would continue their marriage with "love, respect and help for each other," and that they would keep their dissolution action "open, both knowing that we can cancel and dismiss anytime before the final date of termination." Recognizing the latter, Troy and Marie also signed, but did not date or file, a request for dismissal of the dissolution action. Marie says they intended to file the request after Troy attended a hearing on a criminal matter related to their marital differences on September 29, 2005, but Troy died on September 23.

## DISCUSSION

The trial court, relying on section 78, subdivision (d), decided that Marie was not Troy's surviving spouse within the meaning of the Probate Code and, thus, had no right to share in his estate. We agree with that decision.

■ Section 78, subdivision (d) provides that a "surviving spouse" for purposes of the Probate Code does not include "[a] person who was a party to a valid proceeding concluded by an order purporting to terminate all marital property rights."

The stipulated judgment entered July 25, 2005, provided that both Troy and Marie waived forever any right to collect spousal support from each other and divided their community property as follows: "Husband: '93 Harley-Davidson Low Rider & all items in possession, '68 Buick Wildcat Classic Car, '95 Wellcraft 19.5' Boat, 2002 Ford F-150 Lariet [*sic*], and all items in [husband's] possession.

"Wife: All items in [wife's] possession, Settlement From Bike Accident-Personal Injury."

Further, by virtue of their stipulation, Troy and Marie agreed to "waive their rights to notice of trial, findings of fact, and conclusions of law, motion for new trial, and the right to appeal." As noted, each had executed interspousal transfer grant deeds confirming that certain real property they

each had apparently owned before the marriage became once again the grantee's sole and separate property.

It is therefore apparent that, by this proceeding and by their other actions, the parties divided their community property, confirmed their individual share of what was formerly community property as separate property, and waived spousal support thus accounting for and terminating their marital property rights. It is equally apparent that, given the waiver of their right to appeal, the judgment dividing their marital property became final when entered by the court on July 25, 2005, and that the proceedings regarding their marital property were then concluded. Under the circumstances, we find that Marie was, by the time of Troy's death, "a party to a valid proceeding concluded by an order purporting to terminate all marital property rights" within the meaning of section 78, subdivision (d).

We find support for our holding in *Estate of Lahey* (1999) 76 Cal.App.4th 1056 [91 Cal.Rptr.2d 30] (*Lahey*). In *Lahey*, Frances and Clarence Lahey were married in 1984 and they separated in March 1995. In April 1995 Frances petitioned for a legal separation alleging that there were no community debts or assets, waiving spousal support, and requesting that the court terminate any right of spousal support for Clarence. The court entered an order to that effect in July 1995. Clarence died intestate in December 1996 and Frances claimed one-half of his estate as the surviving spouse. (*Id.* at pp. 1057–1058.)

While recognizing that a judgment of legal separation left the bonds of marriage intact, the Court of Appeal pointed out that a surviving spouse for purposes of intestate succession is different from a husband or wife of a decedent. (*Lahey, supra,* 76 Cal.App.4th at p. 1059.) The question before the *Lahey* court was whether the judgment of legal separation constituted an order purporting to terminate marital property rights within the meaning of section 78, subdivision (d). The court, noting that a judgment of legal separation is a final adjudication of the parties' property rights and is conclusive as to those rights, held that it did. There is no principled basis to reach a different result here.

Marie concedes that to the extent the judgment expressly divided marital property rights and recited the parties' agreement to waive spousal support, the judgment was final as to those matters at the time it was entered. But she attempts to avoid the effect of section 78, subdivision (d) by arguing that, although the July 25 judgment may have settled property rights, it did not settle inheritance rights. She enlists the support of a number of older cases—all of which were decided before the enactment of section 78, subdivision (d)—that construe the breadth of marital settlement agreements

and decide whether those agreements were intended by the parties to determine inheritance rights. (See, e.g., *Estate of Smith* (1966) 241 Cal.App.2d 205 [50 Cal.Rptr. 374].)

In this, Marie misses the mark. "Nothing in the language or meaning of [section 78, subdivision (d)] requires . . . an express termination of *inheritance* rights, for the obvious effect of the statute itself is to terminate the inheritance rights of such a spouse." (*Lahey, supra,* 76 Cal.App.4th at p. 1060.) We agree with that reading of the statute. In whatever manner spousal inheritance rights might be determined under other circumstances, under the circumstances presented here, section 78, subdivision (d) determines such rights, denying them to a person in Marie's position because she is not deemed a surviving spouse within the meaning of the Probate Code and is therefore ineligible to inherit all or any of Troy's estate.

For the first time and in a further attempt to avoid the effect of section 78, subdivision (d), Marie contended at oral argument that the subdivision was intended by the Legislature to apply only to legal separation agreements and not to dissolution actions.

"It is a clearly understood principle of appellate review, so well established as to need no citation to authority, that contentions raised for the first time at oral argument are disfavored and may be rejected solely on the ground of their untimeliness." (*People v. Harris* (1992) 10 Cal.App.4th 672, 686 [12 Cal.Rptr.2d 758].)

There is nothing in the language of the statute to support this argument and, given its untimeliness, we consider the argument no further.

To the extent that Marie relies for relief on the provisions of Family Code section 2339, we must reject that argument also. That section provides that "no judgment of dissolution is final for the purpose of terminating the marriage relationship of the parties until six months have expired from the date of service of a copy of summons and petition or the date of appearance of the respondent, whichever occurs first." (Fam. Code, § 2339.) Both parties agree, and the judgment states, that Marie and Troy's marital status did not terminate, nor were they to be restored to the status of single persons, until October 29, 2005.

But Marie's reliance on Family Code section 2339 ignores the difference between her legal status as Troy's wife at the time of his death and her legal status as a "surviving spouse" at the time of his death. (See *Lahey, supra,* 76 Cal.App.4th at p. 1059.) She was at that time legally his wife but she was not his surviving spouse.

■ Having been a party to a valid proceeding concluded by an order terminating all marital property rights, Marie was not Troy's surviving spouse at the time of his death and she could not share in his estate. There was no error.

## DISPOSITION

The judgment (order) is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Raye, Acting P. J., and Morrison, J., concurred.

On April 16, 2008, the opinion was modified to read as printed above.