Filed 1/6/14  Bova v. Wicks CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANTHONY BOVA et al., | B243064 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. NC054922) |
| v. | |
| MATTHEW WICKS et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Douglas M. Haigh, Commissioner.  Affirmed.

Corcovelos Law Group and Thomas C. Corcovelos, for Defendants and Appellants.

Law Offices of Lottie Cohen and Lottie Cohen, for Plaintiffs and Respondents.

_____

Anthony Bova and Lorinda LeBlanc (plaintiffs) filed suit against Matthew and Chi Wicks (defendants).  Plaintiffs alleged defendants failed to disclose material facts when selling plaintiffs a duplex.  Following a bench trial, the court entered judgment against defendants.  On appeal, defendants contend substantial evidence did not support the judgment.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The record on appeal does not include a reporter's transcript or settled statement.  Our summary of facts is taken from the court's statement of decision.  (*Loshonkohl v. Kinder* (2003) 109 Cal.App.4th 510, 512.)

In 2007, plaintiffs became interested in a property in Long Beach that was advertised on a real estate website.  The advertisement listed the property as a duplex with 2,038 square feet of actual living space, "plus a 650 sq. ft. (approx.) bonus room with ¾ bathroom (all permitted by seller.)"  Plaintiffs reviewed the multiple listing service (MLS) information which contained identical language.  The MLS listed rents for three units on the property, including $600 in rent from the bonus room.  In reliance on the income figures in the MLS, plaintiffs bought the property.  During escrow, plaintiffs did not ask if the bonus room was a lawful rental unit.  However defendants knew, at least by the time of escrow, that the bonus room permit (1954 permit) explicitly stated the room was not to be used for residential purposes.  After plaintiffs purchased the property the existing tenant in the bonus room stayed for several years.

In 2009, a power outage in the bonus room led to plaintiffs' first in-person encounter with defendants.  A comment defendants made about work in the kitchen not being permitted made plaintiffs wonder about other aspects of the property.  Plaintiffs hired a contractor to complete a thorough inspection of the property.  The contractor concluded the wiring in the kitchen was completed without a permit; certain structural changes in the kitchen had no permit; there were many problems with wiring in the building; and the bonus room was not permitted as a residential unit.

2

This was the first time plaintiffs learned the bonus room was not a lawful rental unit. Plaintiffs retained a lawyer and eventually filed suit. Plaintiffs' complaint alleged causes of action for breach of contract, fraud, and failure to provide full transfer disclosure in violation of Civil Code sections 1102.1 and 1102.13. Plaintiffs sought exemplary damages.

The court conducted a bench trial in October 2011. There was no court reporter. Defendants testified they did not tell plaintiffs whether the bonus room was, or was not, a lawful rental unit. Defendants listed the bonus room rental income on the MLS, but also stated the property was a duplex, not a triplex. Defendants also testified they gave a copy of the 1954 permit to their realtor. Defendants testified that although they knew the bonus room was not a legal rental unit, they thought identifying the property as a duplex was sufficient. They also told their broker the bonus room was a "bootleg" unit. Defendants contended they disclosed to plaintiffs that certain kitchen work in the kitchen was done without permits. They also claimed the structural repairs took place before defendants purchased the building. They argued various documents notified plaintiffs it was their responsibility to investigate permits and zoning issues regarding the property.

The court issued a proposed statement of decision, to which Defendants filed "objections to omissions and ambiguities."[1] Defendants argued the proposed statement of decision failed to resolve several controverted issues "through ambiguity or omission." They asserted the court's finding that there was non-disclosure of the illegality of the bonus room as a rental unit was ambiguous because the court did not explicitly reconcile numerous facts. These facts included that the 1954 permit was a public record; defendants gave the 1954 permit to their broker; "plaintiffs were advised to review a copy of the bonus room permit through escrow"; plaintiffs did not ask for the 1954 permit and did not obtain a copy; Anthony Bova was a licensed real estate agent; the property was listed as a duplex; and plaintiffs waived all contingencies, including permit issues. Based on these same facts, defendants asserted the court's finding of a misrepresentation with

---

[1] The proposed statement of decision is not included in the record.

3

respect to the legality of the bonus room as a rental unit was ambiguous; the finding of fraud was ambiguous; and the finding of reasonable reliance was ambiguous. Defendants also asserted the damages findings were ambiguous because they did not reconcile the additional facts that plaintiffs made only a 5 percent down payment on the property; the closing price was increased to provide plaintiffs a credit back for closing costs; and the property was appraised at $910,000 "showing no damage."

The trial court considered defendants' objections and issued a final statement of decision. The court rejected plaintiffs' claims based on the lack of permits for structural repairs in the kitchen and the kitchen wiring. But the trial court found defendants did not disclose that the bonus room was not a legal dwelling unit, and the issue was material. It found there was no credible evidence that the 1954 permit was ever given to plaintiffs during escrow. The court further found that "[w]hile the sellers never expressly represented that the back unit was a legal (or illegal) residence, the implication was clear from the MLS and the conduct of the sellers that it was, and that was false. [Civil Code section] 1102.7 calls for honesty in disclosure. Sellers failed in that obligation."

The court thus concluded: "The court finds that the failure of the sellers to reveal in an unambiguous manner the fact that the back unit was not a lawful residence constituted a failure to disclose a material fact affecting the desirability and marketability of the property. The evidence is virtually uncontradicted that the income flow from that unit was a major factor in leading the plaintiffs to purchase the building, and had they known that they were not allowed to rent the back unit, they may well not have bought the property in the first place. Their reliance on defendants' non-disclosure constitutes a violation of [Civil Code section] 1102 and constitutes fraud."

The court rejected plaintiffs' theories for the calculation of damages, which were based on the percentage of illegal bedrooms or square footage. The court also found there was insufficient evidence to support damages based on cost of repair. It noted there was insufficient evidence to determine whether the bonus room could be a legal unit even if plaintiffs fixed all permit issues and brought the unit up to code. The court instead concluded the potential income stream from the property was a major factor in plaintiffs'

4

decision to buy, and 16 percent of that income was attributable to rent from the bonus room. The court reduced the "sales price" by 16 percent, then subtracted from that number the bonus room rents received from the date of the sale until the tenant left in 2010. Total damages based on this calculation amounted to $118,576. The court also awarded plaintiffs $2,500 in punitive damages.

## DISCUSSION

### I. The Incomplete Record is Fatal to This Appeal

Our review in this case is necessarily limited by the absence of a reporter's transcript. All of defendants' arguments concern an alleged lack of substantial evidence to support the trial court's findings. However, "[w]here no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters.* To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, italics in original.)

Defendants contend there was no substantial evidence they did not honestly prepare the Transfer Disclosure Statement, thus there was no evidence to support the trial court's findings of breach of contract, fraud, or a violation of Civil Code section 1102.7. Defendants also argue there was no substantial evidence of misrepresentation because any misreading of the MLS was "not credible" and the MLS "contradicts the Trial Court's finding that Defendants fostered an inference that the bonus room was legally permitted for rental occupancy." Defendants assert there was no evidence of intent to defraud, and no "credible evidence" of justifiable reliance. This last argument is supported mainly by references to documentary evidence, which defendants claim establishes plaintiffs could not have reasonably relied on any representations contrary to the documents. As to damages, defendants do not argue the trial court's method of calculating damages was incorrect, or assert any other argument presenting a purely legal

5

question.  Instead, they contend only that there was no substantial evidence of contract damages or fraud damages because there was no evidence the market value of the property was less than the purchase price.[2]

We must reject all of these arguments.  With or without a record of the oral proceedings we would reject arguments that evidence was not substantial because it was not credible.  On appeal, we do not reweigh the evidence, make our own factual inferences that contradict those of the trial court, or second guess the trial court's credibility determinations.  (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.)

Further, in the absence of a reporter's transcript, or agreed or settled statement, it is conclusively presumed that substantial evidence supported the trial court's findings.  (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154 (*Ehrler*).)  Defendants point to documentary evidence that contradicted plaintiffs' claims, but none of it was dispositive on the relevant issues in this case as a matter of law.[3]  To the extent defendants argue the

---

[2]     At oral argument, defendants argued for the first time that the trial court erred in calculating damages as a matter of law.  To the extent defendants' contention was intended to differ from those asserted in the appellate briefing, we note that we need not consider arguments raised for the first time at oral argument.  (*In re Estate of McDaniel* (2008) 161 Cal.App.4th 458, 463.)

[3]     Indeed, while the documents may have established plaintiffs contractually agreed they had a duty to conduct their own investigation of the property, the documents also suggested defendants repeatedly failed to disclose the bonus room was not permitted as a residential unit.  For example, the Transfer Disclosure Statement indicated defendants were not aware of any room additions or alterations made without necessary permits.  Although an addendum indicated kitchen cabinets and counter tops were installed without city permits, defendants did not also disclose that the permit for the bonus room was not a permit for residential occupancy of the room.  Defendants also indicated on the statement that they were not aware of any nonconforming uses of the property.  In a Seller Property Questionnaire, defendants indicated they were not aware of any occupancy restrictions that applied to or could affect the property, and they were not aware of any other material facts affecting the value or desirability of the property not otherwise disclosed to the buyer.  Thus, these documents did not conclusively support

6

trial court failed to consider the evidence, we must disagree. We presume the trial court carried out its duties as the finder of fact. It was not required to address in the statement of decision all factual issues the parties raised. (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125 [statement of decision need not address all legal and factual issues raised by the parties; it need only state the grounds upon which the judgment rests without necessarily specifying the evidence considered in reaching the decision].)

Moreover, the court explicitly resolved many of the conflicting factual issues defendants raised. For example, the court acknowledged defendants testified they offered the 1954 permit to their realtor, and defendants' broker had the 1954 permit. The court also recognized that defendants argued several documents placed a duty on the plaintiffs to investigate permits and zoning issues. Yet, the court explicitly concluded there was "no credible evidence that the 1954 permit . . . was ever given to the buyers during escrow." It concluded that even though defendants never explicitly told plaintiffs the bonus room was permitted for residential occupancy, their conduct and statements constituted a failure to disclose a material fact affecting the property. Defendants' claim that the trial court failed to resolve conflicting evidence is inaccurate.

Defendants do not argue the trial court's findings are insufficient to support the judgment, or that the findings are incorrect as a matter of law and the error is apparent on the face of the existing appellate record. They argue only that insufficient evidence supported the findings, which implicates portions of the record we do not have. (*Ehrler, supra,* 126 Cal.App.3d at p. 154 ["'on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings, and that the only questions presented are as to the sufficiency of the pleadings and whether the findings support the judgment'"].) The documentary evidence defendants have presented is only one portion of the evidence. When determining whether substantial

---

defendants' arguments that they met their disclosure obligations with respect to the bonus room.

7

evidence supports a judgment after trial, we are not limited to the evidence cited in the trial court's statement of decision.  Indeed, this court must consider the entire record.  (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 49-50.)  We cannot conduct a meaningful substantial evidence review when *all* of the testimonial evidence is missing.  (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186-188.)

It is the appellant's burden to present an adequate record for review.  Defendants have failed to do so.  We presume the unreported trial testimony would demonstrate the absence of error.  (*Estate of Fain, supra,* 75 Cal.App.4th at p. 992.)  Since defendants' only argument is that substantial evidence did not support the trial court's findings we must affirm the judgment.  (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs and attorney fees on appeal.  (*Starpoint Properties, LLC v. Namvar* (2011) 201 Cal.App.4th 1101, 1111.)


                                        BIGELOW, P. J.

We concur:


        RUBIN, J.



        GRIMES, J.


8